Charles H. Allen v. Commissioner.
Allen v. Commissioner
Docket No. 4392-64.
United States Tax Court
T.C. Memo 1967-105; 1967 Tax Ct. Memo LEXIS 155; 26 T.C.M. (CCH) 493; T.C.M. (RIA) 67105; May 11, 1967
*155 1. Held: Petitioner failed to prove that during the taxable year 1959 he incurred expenses in excess of the amount allowed by respondent in the operation of his landscaping proprietorship. The doctrine of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), does not apply where respondent has already allowed a substantial portion of the claimed expenses and petitioner does not establish that he is entitled to deduct a greater amount. 2. Held: Respondent's determination that petitioner received income of $1,000 in merchandise from Mary Muncy during the taxable year 1959 sustained. Petitioner's burden of proof not met to overcome presumptive correctness of such determination. 3. Held: Petitioner did not establish that he incurred a capital loss during the taxable year 1959 from the sale of stock in National Landscaping Corporation. 4. Held: Petitioner failed to prove that during the taxable year 1960 he incurred expenses in connection with his work for National Landscaping Corporation in an amount greater than allowed by respondent. 5. Held: Petitioner failed to establish that during the taxable year 1960 he incurred expenses in the operation of Letcher County Memorial *156 Gardens in an amount greater than allowed by respondent. 6. Held: Petitioner failed to establish that he incurred expenses during the taxable year 1960 on the landscaping of a cemetery for F. B. Hay in an amount greater than allowed by respondent. 7. Held: Petitioner failed to establish that during the taxable year 1960 he incurred a capital loss on a second investment in National Landscaping Corporation. 8. Held: Petitioner did not establish a capital loss during the taxable year 1960 on an investment in Letcher County Memorial Gardens. 9. Held: Petitioner successfully established that he did not realize a short-term capital gain during the taxable year 1960 from the sale of certain stock in Letcher County Memorial Gardens. William S. Tribell and Daniel J. Tribell, 109 S. Main, Middlesboro, Ky., for the petitioner. Dennis M. Feeley, for the respondent. HOYT
Memorandum Opinion HOYT, Judge: The respondent determined deficiencies in petitioner's income taxes for the years 1959 and 1960 as follows: Year
Deficiency
1959
$1,870.92
1960
4,849.09 Only a portion of these deficiencies are in issue here. Some of the facts have been stipulated *157 and are found accordingly and adopted as our findings. Petitioner is an individual residing at 110 North Richardson Street, Somerset, Kentucky, and for the taxable years 1959 and 1960 he filed income tax returns with the district director of internal revenue in Louisville, Kentucky. During these years petitioner was in the business of landscaping cemeteries, individual residences, businesses and highway projects. He acted both as an independent contractor and as an agent for several corporations, serving as an officer in two of these and owning stock in them. Little regard was had by petitioner for the distinctions between the various business entities through which he operated. Petitioner did not produce business records shedding any light on his various transactions in issue, such records, according to petitioner's testimony, being either mislaid, unavailable, lost or stolen. The great bulk of the evidence in this case consisted of petitioner's own extremely general testimony and that of his lawyer, one of the attorneys of record at trial, who also represented petitioner and his corporations during the years of business activity before us. Petitioner made virtually no attempt *158 to secure documentation nor did he produce corroborating testimony for his opposition to the majority of respondent's determinations, infra. Most of petitioner's factual contentions would appear to be estimates based upon his memory of allegedly missing records which, in truth, have not been shown ever to have existed at any point in time. The evidence is, for the most part, unconvincing, vague, conflicting and confusing and the petitioner's briefs are of very little assistance to us. Petitioner's income tax returns for both 1959 and 1960 also were inexact, vague, general and confusing. The returns are somewhat specific as to taxes withheld and itemized deductions claimed but in roundedoff figures as to income and expense items; almost none of the matters which give rise to this litigation and frame the issues before us are even mentioned in the returns themselves and appear to be petitioner's afterthoughts. In his 1959 return, for example, petitioner reported wages of $2,000 from National Landscaping Corporation. In Schedule C, attached, he reported gross receipts from Pike Tree and Landscape Service of $8,000, labor cost as $200, material and supplies of $5,800, total cost of *159 goods sold as $6,000 and gross profit of $2,000. No other taxable transactions were reported but itemized deductions of $2,010.60 were claimed. In his 1960 return petitioner reported even more sparingly. His only income shown was $4,500, wages from National Landscaping; deductions of $1,774.72 were claimed but no other taxable transactions were reported. The issues for the year 1959 arise from respondent's determination, after certain concessions, that petitioner received $1,000 in unreported income and did not incur claimed business expenses in excess of $3,833. These questions are discussed as Issues 1 and 2, infra. The issues for the year 1960 are more complicated and have evolved from respondent's determination, the subsequent pleadings and the stipulation of the parties. They are as follows: (a) Whether in connection with certain compensation from National Landscaping Corporation, the petitioner incurred expenses in excess of $6,461.44; this is discussed as Issue 4, infra. (b) Whether petitioner received income from Letcher County Memorial Gardens totaling $5,563.05 in 1960 and whether petitioner incurred expenses exceeding $1,978.30 in connection with his work on behalf *160 of the Memorial Gardens; petitioner maintains that the sums received from the Memorial Gardens were not reportable and constituted the repayment of loans he had made to the Gardens; these questions are discussed as Issue 5, infra. (c) Whether petitioner incurred expenses in landscaping a cemetery for F. B. Hay in an amount greater than $2,194.85; this is discussed as Issue 6, infra. (d) Whether petitioner realized a short-term capital gain of $6,000 from the sale of stock in Letcher County Memorial Gardens; respondent determined that such gain occurred, and denies that petitioner sustained any capital loss during 1959 on the sale of his stock in National Landscaping Corporation; respondent also denies that the petitioner sustained a capital loss during 1960 on a second investment in the same corporation; respondent denies further that the petitioner sustained any loss during 1960 on his investment in Letcher County Memorial Gardens; the $6,000 gain is discussed, infra, as Issue 9; the losses petitioner claims are discussed, infra, as Issues 3, 7 and 8. Apparently, petitioner would offset these alleged capital losses (the 1959 one being carried forward) against the capital gain *161 determined by respondent for 1960 and also against ordinary income for both years to the extent allowed by law. The deficiency notice also included disallowances of medical expenses for 1959 as well as an addition to the tax for that year which was due to petitioner's computative errors. The medical expenses were disallowed solely because respondent determined a higher adjusted gross income than petitioner had used in conjunction with the applicable formulas for computing the medical deduction. The parties can therefore determine the proper amount of medical deduction in their Rule 50 computation and can also correct petitioner's mathematical errors in computing the tax due. Petitioner has apparently conceded that respondent was correct in disallowing totally his itemized personal deductions for 1960. He presented no evidence to support these deductions and must be considered to have accepted the standard deduction allowed by respondent. After trial, then, there remained some nine factual issues for our decision. Because these issues appear susceptible of separate resolution and because the proper disposition of this case involves almost entirely factual determinations as to the *162 nine questions before us, we deem it prudent and convenient simply to list our findings as to each issue in dispute. Issue 1 Whether Petitioner Incurred Expenses in the Operation of Pike Tree and Landscaping Service During the Taxable Year 1959 in Excess of $3,833 Petitioner had gross receipts from this landscaping business totaling $8,000 for 1959. Prior to trial, the parties agreed that petitioner had substantiated his related expenses in the amount of $3,833.60. Petitioner reported income from this particular landscaping business in the amount of $2,000, claiming a $6,000 business expense deduction for 1959. Respondent contends that petitioner incurred no business expenses in excess of the $3,833.60. Therefore, in issue is some $2,166.40, the difference between the amount claimed by petitioner ($6,000) and allowed by respondent as substantiated ($3,833.60). Unquestionably, the burden lay upon petitioner to rebut the presumption in favor of respondent's disallowance of the $2,166.40 difference. At trial petitioner produced no evidence whatever in the nature of business records to substantiate the amount in issue. As mentioned, petitioner alleges that the records of this *163 business were stolen. The only evidence (not later withdrawn) presented as to this issue was petitioner's oral testimony regarding what the expenses had been. Petitioner admitted that the round numbers used on his 1959 return may have been due to the fact that the various items were mere estimates. Petitioner's recollection, which certainly must be considered in the nature of generalized self-serving statements, does not nearly sustain his burden. His recollections (admitted over respondent's vigorous objections that the spirit of the "best evidence" rule was thereby violated) are, in our opinion as the trier of fact, entitled to little, if any, weight. His testimony was unconvincing and inexact. Petitioner urges that his circumstances call for the application of the principles enunciated in (C.A. 2, 1930). In our judgment, this is not a proper case for such application, however. Where, as here, respondent did not disallow the expenses claimed in full and, in fact, allowed a substantial portion of them, petitioner should come forward with persuasive evidence to establish that he is entitled to a greater allowance. (See e.g., .) *164 Petitioner relies upon , reversing a Memorandum Opinion of this Court. However, in Poletti, we found as a fact that the petitioner had incurred expenses beyond the amount the parties stipulated to be allowable, yet we declined to apply the principle of Furthermore, unlike the present case, the taxpayer in Poletti was at least able to provide some record of the additional expenses. Here, no records of any description were submitted to prove additional expenses. The whole rationale of Cohan's precept is that we should avoid the paradox which arises in acknowledging the existence of a legitimate expenditure and at the same time ignoring the right to any deduction therefor. . In the circumstances of the present case, the credible evidence presented by petitioner is so meager that we cannot possibly conclude that petitioner has established that any expenses were actually incurred beyond the amount allowed and stipulated. We simply are unable to determine from the evidence that there were any additional expenses to which Cohan might apply. Moreover, we *165 are unwilling to apply the Cohan doctrine here in view of the fact that the respondent has already allowed a substantial portion of the claimed expenses. Issue 2 Whether Petitioner Received $1,000 in Income From Mary Muncy During the Taxable Year 1959 In his deficiency notice respondent determined that petitioner received increased business income of $7,667 and the parties have stipulated that the adjustment was computed in part as follows: Income from landscaping
Mary Muncy Cemetery
Cash
$4,500
Merchandise
1,000
$5,500
Respondent has conceded that the sum of $4,500 cash received for services performed by petitioner on the Mary Muncy Cemetery as shown in the foregoing adjustment was income in 1958 not 1959. Therefore, the remaining controversy as to this part of respondent's determination concerns the $1,000 in merchandise which allegedly constituted income to petitioner from Mary Muncy in 1959. At trial petitioner produced no records of any description to counter respondent's determination. Again, he simply stated that he had not received $1,000 in merchandise and that he could not recall receiving anything from Mary Muncy that year. Income items *166 are not different from expense items as regards petitioner's burden of proof. Petitioner cannot rebut the presumption in favor of respondent's determination simply by uttering flat denials which we find unconvincing and vague and inexact recollections favorable to himself. Petitioner's testimony was not persuasive and was less than candid; his conduct and demeanor on the witness stand were such that we can credit little weight to his self-serving assertions. Petitioner's argument on brief is to the effect that he simply has no idea what respondent could have in mind concerning the $1,000 item and that he knows of no other means by which he might have proved that he did not receive this income. In short, he asks, what he could do other than give oral testimony based upon his best recollection? At least one answer is that petitioner could have kept records of the total work done for Mary Muncy and of the payments made by her. These would have reflected, for example, the amount charged Mary Muncy for the work done, payments on account and the amount remaining unpaid thereon. Petitioner testified that he performed services for Mary in 1958 and that as late as 1960 she was still indebted *167 to him for this work. The taxpayer, and especially the business taxpayer, has a duty to keep records of the total amounts of all varieties of income received by him so that he may show himself and the Commissioner the quantity of such income. . Petitioner produced no records whatever, if, indeed, he kept any. And where was Mary Muncy; why was she not produced to give testimony if it would have supported petitioner? Respondent's determination is upheld. Issue 3 Whether Petitioner Incurred a Capital Loss During the Taxable Year 1959 From the Sale of Stock in the National Landscaping Corporation Petitioner alleges in his petition that he acquired and sold stock in the National Landscaping Corporation in 1959 and that he thereby incurred a capital loss. He claimed no such loss in his 1959 income tax return. Respondent's primary contention here is that petitioner never had any proved investment in National Landscaping Corporation - we must agree that he never established any basis, cost or otherwise, for this investment. Beyond doubt, we must have some notion of the amount of the basis in order to compute the amount of the *168 loss. At trial petitioner's only documentary evidence was a check from Associated Cemetery Sales Company for $727.32, which check purports to have been issued for "Purchase of stock and settlement with National Landscaping Corp." Petitioner testified that the fair market value of the assets he transferred to the corporation in exchange for stock in April of 1959 was $9,800, and that he received 98 shares of stock. However, he offered no evidence of property transferred for the stock. To the best of his memory, the property transferred was landscaping equipment consisting of two trucks, a mulcher, a seeder and various small tools; however, on cross examination petitioner was unsure of the model and years of the trucks, was unable to estimate their cost, and was uncertain as to the original value of the seeder and mulcher. Because the corporate records were allegedly stolen, petitioner was not able to prove in an affirmative manner that he ever owned any stock in this corporation. No stock certificates, corporate tax returns, or records of any description were offered. The check offered by petitioner to prove the event of his loss does not establish that it was in payment for petitioner's *169 entire investment in National Landscaping or any specific number of shares and on its face shows that it was also in "settlement with National Landscaping Corp." We think it highly unlikely that petitioner would have agreed to transfer chattels worth $9,800 to a corporation without an offer, a formal contract or a receipt. We agree with respondent that in transactions of the type petitioner claims to have engaged in with National (whereby chattels of value are transferred to a corporation for stock and that stock is later sold), the very nature of the transaction indicates that contracts, receipts, bills of sale and similar documents would likely have been necessary to effectuate the transfer and sale. We are not persuaded by petitioner's bare, vague and general oral allegations. We note also that on Schedule C of his 1959 return petitioner claimed no depreciation for the landscaping equipment which he presumably was using in the operation of his landscaping proprietorship prior to the alleged transfer of the equipment to the corporation in April of 1959. Furthermore, it would seem that if the loss actually had been incurred, the petitioner would have claimed the loss in 1959, and *170 under the circumstances of this case, a carry forward loss in 1960. Petitioner's returns for 1959 and 1960 show that petitioner was not claiming any such losses at that time. Respondent's contention as to this issue is upheld. Issue 4 Whether Petitioner Incurred Allowable Expenses During the Taxable Year 1960 in Connection With His Income From National Landscaping Corporation in Excess of $6,461.44 Respondent, in his statutory notice, increased petitioner's 1960 income in the amount of $750.17 for travel expenses held to be compensation. Petitioner received during 1960 compensation other than wages from National Landscaping amounting to $7,211.61. Respondent conceded that petitioner substantiated $6,461.44 in expenses related to this income. The addition to income of $750.17 represents the difference between the expenses respondent conceded to be substantiated and the total amount received from National. Petitioner offered no evidence of any description to substantiate expenses in excess of the $6,461.44 allowed by respondent. We conclude that he virtually abandoned this issue at trial and chose not to attack respondent's determination. Certainly there is insufficient evidence *171 before us to permit holding for petitioner on this issue; accordingly, we uphold that determination. Issue 5 Whether Petitioner Incurred Expenses in the Operation of Letcher County Memorial Gardens Exceeding $1,978.30 During 1960 In 1959 or 1960, petitioner became a shareholder in another corporate venture, Letcher County Memorial Gardens. Respondent maintains that during the taxable year 1960 petitioner received gross income from this source totalling $5,563.05 and that he substantiated no expenses related to this income in an amount greater than $1,978.30. Petitioner made no real effort to prove expenses in an amount greater than respondent had allowed. His position as to this issue is that the amounts received by him from Letcher were not income at all and that these amounts constituted repayments for loans or advances made by him to the corporation. Petitioner argues that the corporation was started on a shoestring, that it had heavy development expenses, and that he paid the development expenses as they occurred, thus creating a debtor-creditor relationship. However, petitioner produced no evidence of any indebtedness or binding obligation of the corporation in favor *172 of himself. Petitioner failed to offer any documentary or other evidence to corroborate his testimony, and was content to imply that the evidence was lost, stolen, or unavailable. Respondent contends, properly we think, that as in Issue 3, supra, the very nature of the transactions alleged to have occurred would require the use of documents or corporate records. Petitioner has failed to produce any records of the corporation or his own bank or other records which presumably would show to whose account certain checks received by petitioner (and alleged by him to have been expended for the corporate benefit) were deposited. Petitioner also failed to introduce as evidence any canceled checks or vouchers or receipts from merchants or service concerns documenting sums he claims were spent on behalf of the corporation. Even if these had been produced, we could not conclude without more that the sums allegedly expended in the corporate behalf constituted an enforceable claim against the corporation which was satisfied by petitioner's receipt from the corporation of other, later disbursements in issue. Again, petitioner has not nearly sustained his burden of proving error in this portion *173 of respondent's determination. Issue 6 Whether Petitioner Established That He Incurred Expenses Exceeding $2,194.85 in Connection With the Landscaping of a Cemetery for F. B. Hay During the taxable year 1960 petitioner received gross income in the amount of $7,000 from F. B. Hay. Apparently, this amount represents compensation for the landscaping of a cemetery at Albany, Kentucky, payment being had from Hay in the form of a note in the approximate amount of $7,800, which petitioner discounted for $7,000. On his income tax return for 1960, petitioner reported no income whatever from this source. Petitioner's position with respect to this income is that he incurred related expenses amounting to at least $5,000; respondent allowed petitioner only $2,194.85 of expenses and increased petitioner's business income by $4,805.15. The question before us is whether petitioner has substantiated any expenses beyond the amount allowed by respondent. We find that he has not. Again, petitioner offered no evidence other than his own testimony as to the quantity of these expenses, again alleging that the pertinent records were lost, stolen or otherwise unavailable. He estimated that his expenses *174 on such a project would have been in the neighborhood of $5,000, this estimate being based on his general experience in the landscaping business and a list said to reflect the actual expenses which was purportedly made up when the work was done. Petitioner testified at trial that the list was made up for the purpose of determining "the amount of profit that I had made, actually for tax purposes." We note again, however, that petitioner reported neither income nor expenses associated with this project on his return for 1960. This failure to report the difference between the estimated expenses of $5,000 and the gross income of $7,000 hardly corroborates petitioner's testimony that he was keeping an accurate list of expenses for tax purposes. We believe that petitioner's testimony concerning the origin of this list is of doubtful credibility and that his general recollections and estimates are entitled to little weight. His estimates do not sustain his burden of proof or establish affirmatively that any expenses were incurred beyond the amount allowed by respondent. Again, the taxpayer has some duty to keep and produce at least minimal records, and though a taxpayer's recollections under *175 certain circumstances might persuade us that expenses had been incurred, this petitioner's own story strikes us, frankly, as being somewhat incredible. Petitioner urges additionally that the doctrine of , should also apply to this issue. He is mistaken. What we said regarding the applicability of Cohan to Issue 1, supra, is of equal validity here. Respondent's determination is upheld without change. Issue 7 Whether Petitioner Incurred a Capital Loss During the Taxable Year 1960 on a Second Investment in National Landscaping Corporation Petitioner maintains that after his initial stock in National Landscaping was sold at a claimed loss, (Issue 3, supra) he still was unable to recognize an unprofitable or unsavory situation and invested again in the same corporation. He claims that he contributed three trucks to the corporation and was supposed to receive in return 36 shares of stock as well as a salary of $500 per month, all expenses, and one-third of the net profits. Once again petitioner produced no records, receipts or documentary proof whatever to show that any property was transferred to the corporation. He did not introduce *176 a copy of the subscription agreement or contract mentioned above under which he would receive the 36 shares, his general position being that the corporate records were not available to him because they were stolen and/or that the controlling interests in the corporation were hostile to him and would not make records available. Petitioner did not prove the fact of the transfer to our satisfaction. Surely this is the sort of transaction in which the taxpayer would maintain some record of a personal and noncorporate nature, which might be produced even if the minutes or other books of the corporation were not available to him. On brief, petitioner contends that the property contributed had a fair market value of $3,600, but no similar contention was made at trial nor was evidence of value produced. This is irrelevant, in any event, as we are not even convinced of the fact of this second investment in National Landscaping. Petitioner's rather fantastic version of this venture is that having made the investment, he never received his stock in the company, the company never honored its commitments to him, and that all the assets were transferred to yet another corporation and he has *177 been left "holding the bag" of a hollow corporate shell. Though not articulated, we take petitioner's theory to be that he had a loss either for reasons of worthlessness or abandonment. No sale or exchange is alleged. Even if we could accept petitioner's unsubstantiated general oral testimony as to the facts of his rather fantastic allegation, which we do not, again he has failed to prove the basis of his investment. This is certainly necessary where worthless securities are involved. See . Perhaps even more important, petitioner has not pointed out the identifiable events which fix his loss in the year 1960. The right to a loss deduction depends upon certain identifiable events which the taxpayer must establish in fixing the loss in the year when he seeks to take the deduction. See , and cases cited therein. Petitioner did not even attempt to establish such events. We find that the loss was not proved, if indeed, this second investment in National Landscaping ever occurred. Issue 8 Whether Petitioner Incurred a Capital Loss During the Taxable Year 1960 on an *178 Investment in Letcher County Memorial Gardens At some time prior to the end of the calendar year 1959, petitioner became involved in still another cemetery or landscaping venture, Letcher County Memorial Gardens, Inc. Petitioner was president of the corporation and a 50-percent stockholder. Initially, the only other shareholder was Abel M. Hughes, who owned the remaining 50 percent of the issued and outstanding stock. Petitioner maintains that he suffered a capital loss on his investment in Letcher during the taxable year 1960; he urges on brief and testified at trial that the stock was pledged to secure a loan and was subjected to foreclosure when the loan became overdue. Again, petitioner failed to introduce any documentary evidence tending to prove the event of the loss, and all corroborative testimony was vague, general, unconvincing and of little value. Furthermore, petitioner once again failed to prove the basis of his investment. He urged orally at trial that his investment in the corporation had a value of $5,000 and introduced Letcher's corporate tax return for 1959 which showed a capital stock liability in the amount of $10,000. However, the tax return is not necessarily *179 probative of the amount of the investment or the transfer of any property to the corporation. It does not establish whether the amount specified or any amount was ever actually paid in, or whether any paid-in amounts were ever withdrawn. As with the other loss issues, we are not persuaded that petitioner has established that he made an initial investment in any definite amount. Also, as in Issue 7, supra, petitioner was unable to prove the identifiable events fixing his loss. He has failed to carry his burden of proof; his oral allegations as to the foreclosure do not suffice. The presumptive correctness of respondent's determination has not been overcome. Issue 9 Whether Petitioner Had a $6,000 Short-Term Capital Gain During the Taxable Year 1960 From the Sale of Stock in Letcher County Memorial Gardens Which Had Initially Been the Property of Abel M. Hughes As already found in Issue 8, supra, at some time prior to the end of the year 1959 petitioner became involved with Letcher County Memorial Gardens, Inc.; he became a 50-percent shareholder and president of the corporation. The only other shareholder was Abel M. Hughes who also owned 50 percent of the corporate stock. Respondent *180 determined that during the taxable year 1960, petitioner realized a $6,000 short-term capital gain on the sale of Hughes' stock. At trial and on brief it became apparent that respondent's determination was based on the proposition that in January of 1960 petitioner had purchased Hughes' equity interest in Letcher and sold it for a greater amount to Gladys McGregor, who contined to be associated with Letcher at least through April of 1961. Letcher's primary asset was a certain tract of 9.3 acres of land suitable for cemetery use. This land was acquired by the corporation from Palmer Bentley at a total consideration of $10,000. In January of 1960 there remained unpaid approximately $4,100 of this amount, and the agreement between the grantor, Bentley, and the grantee, Letcher, apparently reserved to grantor Bentley the right to resume possession if the total amount due was not paid prior to a certain day in January of 1960. At trial petitioner maintained that the corporation had been developing the property on the strength of an option which by its terms had to be exercised prior to the given day in January of 1960. The existence of the option agreement was never proved, but we are *181 convinced by the evidence that by some form of contract, the corporation (Letcher) was obligated to pay its grantor (prior to a specific date in January of 1960) approximately $4,100, this amount being the outstanding balance on the $10,000 purchase price. As this due date approached, the fortunes of the corporation became increasingly uncertain; neither petitioner nor Hughes, the other shareholder, had the money to pay the outstanding balance. Hughes was willing to sell his 50-percent ownership for $3,000, and it made no difference to him who purchased his investment. Petitioner, without sufficient personal or corporate funds to buy the stock, apparently seized upon the availability of Hughes' shares as a means of procuring the advancement of sufficient funds to bail the corporation out of its difficulties. Petitioner and the corporation's lawyer worked out an arrangement with the aforementioned Gladys McGregor whereby Gladys would advance to the corporation the balance due to Bentley on the purchase price of the cemetery tract and at the same time purchase the Letcher stock which belonged to Abel Hughes. Gladys advanced $10,000 to the corporation in the form of two separate checks. *182 One check was in the amount of $4,120 and was given to Palmer Bentley or his lawyer in payment of the balance due on the cemetery property. The remaining $5,880 was deposited in a Pikesville, Kentucky bank by the corporation's lawyer, who made the following disbursements of it for the following purposes: (1) $3,000 directly to Hughes' lawyer as payment for the surrender of Hughes' shares; (2) $1,000 to himself as a fee for handling the transaction and possibly in payment for other services; (3) $1,880 to petitioner either as repayment for loans made to the corporation or as compensation. Hughes' stock certificates were delivered personally by Letcher's attorney to Gladys McGregor's lawyer; apparently, new certificates were not issued, the old ones merely being endorsed over and delivered to Gladys. At trial neither petitioner nor the lawyer who acted for Letcher in the McGregor transaction was able to state definitely whether the sale of Hughes' stock was a redemption by the corporation followed by a stock issue to Gladys, or whether Hughes transferred his stock directly to Gladys. Respondent attaches great significance to petitioner's inability to provide legal conclusions as to *183 whether or not a redemption had occurred. Petitioner and Letcher's attorney, who was petitioner's corroborative witness on this issue, indicated at times that there was an outright transfer from Hughes to Gladys McGregor; however, because the lawyer stated that he was representing only the corporation in this transaction and was not acting for any other parties, the facts developed at trial suggested that a redemption followed by a stock issue might have occurred. However, we feel that the legal effect of this transaction (i.e., whether or not a redemption was involved) is not material to the issue before us. Respondent has not urged that this is a case where the corporate entity should be disregarded or where any of the codified attribution rules should apply. Respondent contends simply that when Abel Hughes transferred his stock to Gladys McGregor petitioner somehow purchased the stock first and in effect it was he who sold the shares to Gladys McGregor. Petitioner has developed sufficient facts at trial to rebut the presumptive correctness of respondent's determination. We are satisfied from the evidence and conclude that Hughes' shares were not actually or constructively petitioner's, *184 they never came into petitioner's hands, and petitioner realized no gain on the sale or exchange of Hughes' stock. Respondent's position in dollars and cents is that petitioner purchased Hughes' stock for $3,000 and sold it to Gladys McGregor for $10,000, which netted him a $6,000 gain after the allowance of $1,000 in attorneys' fees on the transaction. [1]
Respondent's determination is contrary to the facts developed at trial. Respondent was content to rest upon his determination, while petitioner, in a different style entirely from his presentation on the other issues, offered some documentary proof and considerable corroborative and credible testimony by Letcher's lawyer. Respondent's determination as to this issue is not upheld, and we conclude and hold that petitioner realized no gain whatever from the sale of Hughes' *185 stock in Letcher County Memorial Gardens to Gladys in 1960. In summary, then, we have upheld respondent on all issues except this final one involving the transfer of Hughes' stock in Letcher County Memorial Gardens to Gladys McGregor. With the other issues, there was a virtual failure of proof on petitioner's part. He has not sustained his burden on these issues to overcome the presumptive correctness of the Commissioner's determinations and accordingly such determinations are upheld. To reflect all required adjustments. Decision will be entered under Rule 50. Footnotes
1. Prior to trial respondent conceded that petitioner incurred a loss in the amount of $1,377 on the sale of stock in Cumberland Memorial Gardens, Inc. Accordingly, the net amount of short-term capital gain in issue for 1960 is actually $4,623, arrived at by deducting the allowed Cumberland loss from the gain respondent determined on the McGregor transaction.↩